Christopher SELLETTI, Plaintiff,

v.

Mariah CAREY, et al., Defendants.

No. 96 Civ. 0016(DC).

United States District Court,
S.D. New York.

July 27, 2000.

Jeffrey Levitt, Amityville, NY, for plaintiff.

Parcher, Hayes & Snyder, by Orin Snyder, Peter Shimamoto, New York City, for Sony Music Entertainment Inc., Sony Songs, Inc., and Mariah Carey.

## MEMORANDUM DECISION

CHIN, District Judge.

Before the Court is the motion of defendants Sony Music Entertainment Inc., Sony Songs, Inc., and Mariah Carey to dismiss the complaint pursuant to Fed.R.Civ.P. 41(b) and 37(b) and the Court's inherent authority. For the reasons that follow, the motion is granted and the complaint is dismissed, with prejudice and with costs.

Selletti's "Motion for Relief from Orders," filed with a "Notice of Hearing" and docketed on November 30, 1999, is denied in all respects.

### BACKGROUND

#### A. *Prior Proceedings*

On June 26, 1997, I issued an order dismissing this action with prejudice because plaintiff Christopher Selletti had failed to pay a discovery sanction of $5,000 and had failed to post a security bond of $50,000. I thereafter denied two requests by Selletti to vacate the order of dismissal. *See generally Selletti v. Carey,* 173 F.R.D. 96 (S.D.N.Y.1997); *Selletti v. Carey,* 174 F.R.D. 311 (S.D.N.Y.1997); *Selletti v. Carey,* 177 F.R.D. 189 (S.D.N.Y. 1998).

On appeal, the Second Circuit concluded that I did not abuse my discretion by imposing a $5,000 sanction against Selletti for "a series of discovery abuses and a general strategy, pursued by both plaintiff and his attorney, to prosecute this action through the media rather than comply with the discovery requirements of the Federal Rules [of Civil Procedure] and the orders of the court."

*Selletti v. Carey,* 173 F.3d 104, 110 (2d Cir. 1999). Likewise, the Second Circuit concluded that I did not abuse my discretion by requiring Selletti to post a security bond in the amount of $50,000 in light of my findings—which the circuit court did not disturb—that "the merits of plaintiff's claims were questionable, that plaintiff had violated discovery orders and otherwise had failed to prosecute his claims adequately, and that defendants' ultimate ability to recover costs that might be awarded by the court was in doubt." *Id.* at 111. Accordingly, the Second Circuit affirmed my May 21, 1997 order imposing sanctions of $5,000 and requiring that plaintiff post a bond of $50,000. *Id.* at 110–11.

The Second Circuit remanded the case, however, because it concluded that I had failed "to accord any significant weight to plaintiff's inability to pay the sanction or post security in the required amount, a consideration relevant to plaintiff's interest in receiving a fair chance to be heard." *Id.* at 111. The circuit court instructed as follows:

> On remand, the district court may consider whether dismissal is appropriate based on a finding that plaintiff was in fact able to pay the sanctions or post the required bond; based on plaintiff's overall conduct apart from his non-compliance with those requirements; or based on a conclusion that the evidence already received by the district court demonstrates defendants' entitlement to summary judgment . . . .

*Id.* at 113.

## B. *Proceedings on Remand*

Following the Second Circuit's remand, defendants served discovery requests on Selletti seeking information regarding his financial situation and in particular whether he had the ability to pay the $5,000 sanction or post the $50,000 bond. Again, however, Selletti failed to respond in a diligent and complete manner. For example, he failed to produce a number of categories of documents. (Snyder 10/29/99 Aff. ¶ 6). At a conference on September 13, 1999, I ordered Selletti to produce certain documents that he had failed to produce. (9/13/99 Tr. at 21–23). The parties submitted certain letters to the Court and I again overruled Selletti's objections to certain document requests and I reiterated my order that he produce certain documents by September 21, 1999.

Although Selletti did produce some documents, he failed to fully comply with my order as significant categories of documents remained unproduced as of September 21, 1999. (Snyder 10/29/99 Aff. ¶ 16). By letter dated September 28, 1999, Selletti produced some additional documents. But this production was still incomplete; for example, Selletti produced the first pages of tax returns for FYM, Inc. ("FYM"), a corporation in which he held an ownership interest, for 1997 and 1998 but not the remaining pages. (*Id.* ¶ 18 & Ex. R). Moreover, Selletti had previously represented to the Court that FYM had not filed corporate tax returns, and these prior representations to the Court had not been correct. (*Id.* ¶¶ 9, 13, 18; 9/13/99 Tr. at 21).

The documents that Selletti did produce showed that on or about June 1, 1997, just ten days after my May 21, 1997 order imposing the $5,000 discovery sanction and requiring the $50,000 bond, he had transferred his 50% interest in FYM to his then-girlfriend (and future wife). (Snyder 10/29/99 Aff. ¶ 7 & Ex. H, I). Moreover, FYM's tax returns (or the first pages thereof) showed that FYM reported gross income for 1997 of $121,793 and for 1998 of $114,072. (*Id.* ¶ 19 & Ex. R). Selletti's personal tax returns show adjusted gross incomes for 1996, 1997, and 1998, respectively, of -$323, $11,682, and $27,821. (*Id.* ¶ 19 & Exs. U, V, W).

On September 30, 1999, Selletti was deposed. He still had not produced as of that date a number of categories of documents, including, for example, any bank account statements after 1997, any credit card statements after 1997, FYM's books and records for any period of time, any portion of FYM's tax returns for 1996, or any W–2s or 1099s for Selletti or his wife for 1996, 1997, or 1998. (*Id.* ¶ 21). Yet, he admitted that FYM maintained books and records, that FYM paid for certain of Selletti's living expenses, that he had certain credit card statements in his apartment that he had not produced, and that his future wife had taken over their

finances after May 1997. (*Id.* ¶ 23, citing Ex. J (Selletti Dep. Tr.) at 20, 33, 54, 59, 122–23). Selletti also stated that he could have paid the $5,000 discovery sanction in 1997 (as well as in 1999) in the same manner in which he paid for other living expenses (*i.e.,* through credit card cash advances on one of his 36 credit cards) and that he did not pay the discovery sanction in 1997 because he thought his attorney should have paid it. (*Id.,* citing Ex. J at 130–33, 142–43).[1]

Approximately a week after his deposition, Selletti produced additional documents that should have been produced by September 21, 1999. (*Id.* ¶ 24). Selletti still did not, however, produce all the required documents. (*Id.* ¶ 25).

This motion followed.

### DISCUSSION

Defendants move to dismiss this action on three grounds: first, they contend that Selletti's misconduct prior to his appeal provided a sufficient basis for dismissal, regardless of his failure to pay the $5,000 sanction or post the $50,000 bond; second, they contend that his continued misconduct following remand provides an additional basis for dismissal; and third, they contend that Selletti had the means to pay the $5,000 sanction in 1997 and that his failure to do so therefore provides a sufficient basis for dismissal as well. I agree, in all three respects.

### A. *The Prior Misconduct*

Selletti's prior discovery abuses and other misconduct are detailed in my prior decisions and orders and I will not repeat them in detail here. They include: failing to diligent-

ly prosecute this action while publicly making serious allegations that damaged the reputations of defendants; repeatedly delaying the case; failing to respond in a timely manner to defendants' discovery requests; failing to abide by the Court's orders; prosecuting this case, as the Second Circuit noted, through the media while failing to comply with discovery obligations and the Court's orders; giving a copy of the purported poem to the media while failing to produce it in a timely manner in discovery; swearing to the truth of certain allegations in his complaint and later testifying that he had not read the complaint carefully; giving testimony that was significantly inconsistent with the allegations of his complaint; and telling a story that was patently incredible.

In the earlier proceedings, I did not consider whether this misconduct provided a sufficient basis for dismissal because I relied, in part, on Selletti's failure to pay the $5,000 sanction and post the $50,000 bond. Selletti's remaining conduct, however, provides a more than sufficient basis for dismissing the complaint pursuant to Rules 41(b) and 37(b) and the Court's inherent power. Indeed, the Second Circuit commented in its decision that "most of the relevant considerations weigh *heavily* in favor of dismissal." 173 F.3d at 111 (emphasis added).[2] I hold that even if Selletti's failure to pay the $5,000 sanction and post the bond are removed from the picture, the complaint must nonetheless be dismissed because of his other prior misconduct.

### B. *The Continued Misconduct*

Any doubt is eliminated by Selletti's continued misconduct following remand. De-

---

1. Selletti testified as follows:
   Q. Did you consider the $5,000 sanction a bill at the time that it was issued and you were directed—
   A. I am glad we are going down this road. No, I didn't consider it a bill. I considered it a sanction that was passed on to me individually when it should have been passed on to the attorney.
   Q. ... You understood, sir, it was your individual responsibility, whether you agreed with it or not, that it was your individual responsibility to pay?
   A. At the time? No, I didn't understand that because other attorneys were advising me that usually they get that from the attorney and not from the individual. Because of an attorney's actions. So I didn't understand.
   (Snyder 10/29/99 Aff., Ex. J at 142–43). Of course, the $5,000 sanction was imposed against both Selletti and his attorney, and it was imposed not just because of his attorney's actions but because of Selletti's actions as well.

2. The Second Circuit noted that my dismissal order "was, by its terms, predicated on plaintiff's failure to pay sanctions and file security for costs." 173 F.3d at 113. The circuit court therefore concluded that it was "constrained to vacate the dismissal and remand the case for further proceedings." *Id.*

spite the history of the case and the prior imposition of sanctions, Selletti continued to flout his discovery obligations and he continued to show a disregard for the judicial process. He failed to produce documents relevant to his financial ability to pay the sanction and post the bond on a timely basis and he failed to produce certain documents at all. He asserted objections to document requests that were frivolous.[3] He made representations to the Court that were false. He failed to produce documents that had been requested that he admitted he had in his apartment. He engaged in gamesmanship by, for example, producing only the first pages of certain tax returns and then not producing the complete documents until after his deposition was taken. The documents also show that he transferred a 50% interest in an apparently substantial company to his future wife just ten days after I issued an order imposing sanctions and requiring a bond.

Selletti was specifically warned at the conference on September 13, 1999 that time was of the essence and that his failure to comply with my order to produce the financial documents would be an independent basis for dismissal of the action. (9/13/99 Tr. at 23). Yet he still did not comply.

Selletti's continuing misconduct has prejudiced defendants. For example, their ability to explore Selletti's ability to post the $50,000 bond was hampered. As a consequence, and under all the circumstances of this case, I hold that Selletti's continued misconduct provides an independent basis for dismissing the complaint.

### C. Selletti's Ability To Pay

Finally, although Selletti did not fully comply with his discovery obligations following remand, the evidence that he did provide demonstrates that he had the ability to pay

the $5,000 fine in 1997 and 1998. Selletti had a 50% interest in FYM until he transferred that interest to his future wife following the imposition of sanctions and a requirement of a bond. The tax returns show that FYM had a substantial gross income in 1997 and 1998. Moreover, Selletti acknowledged that some of his living expenses were paid by FYM. Finally, Selletti admitted at his deposition that he could have paid the $5,000 sanction in 1997 in the same manner in which he paid for his other living expenses, i.e., through credit card advances. In fact, Selletti testified that he did not pay the sanction because he believed his attorney should have paid it. For all these reasons, I find that Selletti had the means to pay the $5,000 sanction in 1997 and that he wilfully failed to do so.

### CONCLUSION

In sum, on the basis of my findings of Selletti's prior misconduct (which findings were affirmed by the Second Circuit), my findings that he has continued to engage in misconduct following remand, and my additional finding that he was in fact able to pay the $5,000 sanction in 1997 but refused to do so, I hold that the complaint must be dismissed because: Selletti has abused the judicial process on a sustained basis; he has done so wilfully with notice of the possibility of dismissal; he has prejudiced defendants with his conduct and they will be further prejudiced by additional delay; he has had more than a full and fair opportunity to be heard; and no sanction less drastic than dismissal would be adequate.

Accordingly, defendants' motion to dismiss is granted. The complaint is hereby dismissed, with prejudice and with costs. Defendants shall promptly submit a bill of costs and the Clerk of the Court shall enter judgment dismissing the complaint with prejudice, awarding defendants $5,000 on account

---

**3.** For example, plaintiff objected to defendants' request that he produce copies of credit card statements. (Snyder 10/29/99 Aff., Ex. E, ¶¶ 12, 13; Ex. G, ¶¶ 12, 13). Credit card statements were clearly relevant because they provided information relating to Selletti's lifestyle and spending habits. Indeed, Selletti eventually testified that he paid for living expenses from credit card advances and that he could have paid the

$5,000 sanction from such advances as well. Selletti also objected to providing information about FYM, contending, among other things that this was a corporation that had no assets and "[no] value of any kind." (9/13/99 Tr. at 19). Documents later showed, however, that FYM had a gross income in 1997 of $121,793 and Selletti testified that FYM paid certain of his living expenses.

of the sanctions imposed in May 1997, and assessing costs.

SO ORDERED.